# EXHIBIT 4



# IN THE DISTRICT COURT OF OKLAHOMA COUNTY
# STATE OF OKLAHOMA

| | |
|---|---|
| MARTIN L. POINSETT,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>NEW YORK LIFE INSURANCE COMPANY d/b/a NEW YORK LIFE GROUP BENEFIT SOLUTIONS, and LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>　　　　　　　　　Defendants. | FILED IN DISTRICT COURT<br>OKLAHOMA COUNTY<br><br>Case No: CJ-2021-4897　　NOV 1 6 2021<br><br>RICK WARREN<br>COURT CLERK<br>109 _____<br><br>**JURY TRIAL DEMANDED**<br>**ATTORNEY LIEN CLAIMED** |

## FIRST AMENDED PETITION

1. Plaintiff, Martin L. Poinsett ("Plaintiff" or "Mr. Poinsett") bought a disability insurance policy from Life Insurance Company of North America and faithfully paid premiums for this coverage for approximately eighteen (18) years up until the date that he had to stop working because of a serious, life-threatening illness.

2. Cigna Group Insurance ("Cigna") owned and controlled Life Insurance Company of North America. The two companies are the alter egos of each other and both share in the risk and premiums for the insurance they sell including Plaintiff's insurance policy. Cigna used insurance companies such as Life Insurance Company of North America to issue policies but the money from the premiums went to Cigna or whichever entity Cigna wanted the money to go to. Additionally, the risk for paying claims was either owed by or shared by Cigna. Therefore, Cigna Group Insurance and Life Insurance Company of North America are the insurers on Plaintiff's disability insurance policy under Oklahoma law. Life Insurance Company of North America is simply the insurer through which Cigna decided to issue the policy.

3. On December 31, 2020, New York Life Insurance Company ("New York Life")

purchased Cigna Group Insurance for $6.3 billion in order to generate capital to contribute to New York Life's surplus dividends and earnings. Cigna needed the money to retire debt from the acquisition of Express Scripts Holding and New York Life wanted to invest more of the billions of dollars in profit that it acquired from its life insurance business in the disability insurance business. New York Life is the successor to Cigna with respect to the disability insurance block of business that New York Life purchased from Cigna and is responsible for the tortious actions of Cigna in mishandling this claim and is further responsible for the contract obligations under Plaintiff's policy.

4. New York Life owns and controls New York Life Group Benefit Solutions and is the alter ego of that company and shares in the premiums and risk for the insurance coverage that New York Life assigns to New York Life Group Benefit Solutions to administer and handle including Plaintiff's insurance policy. New York Life changed the name of Cigna Group Insurance to New York Life Group Benefit Solutions. New York Life notified insureds, including Plaintiff, in April 2021 that Cigna Insurance Group (sic) was now New York Life Group Benefit Solutions.

5. Mr. Poinsett bought this disability insurance from Cigna for peace of mind and to protect his family from financial disaster if he became disabled and unable to work and earn a living. Cigna sold this insurance for commercial advantage, i.e., to make a profit. Cigna and Life Insurance Company of North America owe Plaintiff a duty of good faith and fair dealing to promptly investigate and evaluate fairly and objectively and pay covered claims. Insurance industry standards for handling first party claims such as this claim require the insurers to explain the coverages and the coverage determinations and to have properly trained and unbiased examiners, consultants and experts to work the claims. Further, the insurers' claim department should give equal consideration to the insured's interests, be fair to the insured and give the benefit

of any reasonable doubt to the insured. Defendants do not do any of these things. They make more money by looking for excuses to deny coverage and by using biased consultants who have a financial incentive to help the insurer deny claims.

6. Mr. Poinsett became disabled and unable to work as a result of a serious illness diagnosed in early 2018. His medical condition was so serious that it is normally fatal. The painful and disabling sequela and complications from this illness are well documented in medical literature and in Mr. Poinsett's medical records. Mr. Poinsett had a very successful insurance agency which provided a substantial income. He would still be in that business if he could work but he cannot. Mr. Poinsett has always worked hard to provide for his family and would be working now if he was not so sick from the serious and life-threatening illness that he has so far survived.

7. Mr. Poinsett made a timely claim for policy benefits with Cigna Group Insurance and complied with all terms and conditions of the subject disability insurance policy including providing information from his physicians establishing that he was unable to perform all the essential duties of his occupation solely due to injury or sickness and that he was unable to earn more than 80% of his "indexed covered earnings" as defined in the policy.

8. Cigna agreed that Mr. Poinsett was disabled under the terms of the subject insurance policy and began paying disability benefits. In fact, Social Security Disability also recognized the severity of Mr. Poinsett's condition and approved his disability on the first application which further confirms just how obvious it was and is that Mr. Poinsett was and is disabled as defined in the policy.

9. Cigna then later asserted that Mr. Poinsett was not disabled and terminated his policy benefits. Cigna ignored Plaintiff's doctors, records and opinions and Plaintiff's information as to the degree of pain and inability to work and looked for excuses to deny continuing the benefits

including using biased consultants.

10. Cigna's denial of continuing policy benefits was in breach of the insurance policy and the implied covenant of good faith and fair dealing because Cigna:

    a. knowingly used purported experts who were biased in favor of the insurance company to deny benefits;

    b. refused to objectively investigate the degree of Mr. Poinsett's continuing pain and disability before terminating policy benefits;

    c. did not establish that Mr. Poinsett was able to actively work in any substantially gainful occupation for which he was or may have been reasonably qualified, nor did the insurer establish that Mr. Poinsett was able to earn 80% of his or her indexed covered earnings as defined in the policy;

    d. used restrictions and limitations not set forth in the policy in order to reduce and restrict the policy benefits;

    e. failed and refused to follow its own policies and procedures regarding the handling of disability insurance claims and failed to comply with insurance industry standards for handling first party disability insurance claims;

    f. denied policy benefits knowing there was no proof that Mr. Poinsett was able to actively work in any substantially gainful occupation for which he was qualified or may reasonably become qualified by reason of his education, training or experience;

    g. denied benefits knowing there was no proof that Mr. Poinsett was able to earn more than 80% of his indexed covered earnings; and

    h. did these things as a matter of routine claim practice. This is how they handle claims under policies that their insureds have purchased in good faith.

11. Mr. Poinsett filed an appeal on April 12, 2021 providing additional documentation including a report from a vocational expert, a letter from Mr. Poinsett's primary care physician, and statements confirming Mr. Poinsett was unable to work in any substantially gainful occupation or earn more than 80% of his indexed covered earnings (as defined in the policy). Cigna rarely, if ever, reverses a prior denial because it makes more money by not paying or continuing to pay claims.

12. New York Life Insurance Company d/b/a New York Life Group Benefit Solutions handled the appeal like Cigna because the Cigna employees and claim department went to work for New York Life after it bought Cigna and New York Life adopted the claim procedures and guidelines from Cigna. It was essentially the same people, claims department, and claim guidelines and procedures with a new name.

13. This conduct in summarily rejecting the appeal, like the conduct of Cigna in handling the claim, was done as a matter of routine claim practice by these insurers wherein the insurers automatically contest disability claims that they had previously found to be payable by using biased, untrained and unfair persons in the guise of objective and neutral expert witnesses.

14. As a result of the actions of the insurers, Plaintiff has suffered loss of policy benefits, financial hardship, mental and emotional injury, physical bodily pain and injury, worry, and embarrassment.

15. Mr. Poinsett has a single cause of action to recover his disability insurance benefits under the policy. He is currently advancing this claim concurrently on breach of contract and bad faith theories seeking indemnity for his loss under the insurance contract together with the appropriate damages for the insurers' bad faith refusal to provide such policy coverage. *Taylor v. State Farm Fire and Casualty Company*, 1999 OK 44, 981 P.2d 1253 (Okla. 1999).

16. Further, although the insurers' actions in denying policy benefits was intentional and without just cause, there is no intent to harm requirement for either breach of contract or insurance bad faith under Oklahoma law.

17. Defendants' actions were willful, reckless, intentional and malicious and were done as a matter of routine claim practice without regard to the serious harm caused to its insureds by the callous disregard for their right to promptly receive policy benefits in the event of disability.

Therefore, Mr. Poinsett is entitled to punitive damages. The right to and the determination of the amount of punitive damages under Oklahoma law is to be determined by the jury. Punitive damages are not a separate claim or cause of action under Oklahoma law but rather are additional type of damage available to insureds in insurance bad faith cases such as this.

18. Plaintiff demands and is entitled to a jury trial to determine the appropriate verdict amount to fairly compensate him for the damages caused by Defendants' acts and omissions and to further determine the appropriate amount of punitive damages to punish Defendants for what they did here and to deter Defendants and other insurers from committing similar wrongful acts in the future.

**WHEREFORE**, Plaintiff, Martin L. Poinsett, prays for damages against New York Life Insurance Company and Life Insurance Company of North America in the amount of the remaining insurance policy benefits owed plus statutory interest, compensatory damages, extra contractual damages, punitive damages and for all other relief which the Court deems just and equitable. The amount in controversy exceeds the amount required for federal court jurisdiction.

**MANSELL, ENGEL & COLE**

By: *[signature]*

Steven S. Mansell, OBA #10584
Kenneth G. Cole, OBA #11792
Zachary K. Housel, OBA #32802

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

204 North Robinson Avenue, 21st Floor
Oklahoma City, OK 73102
T: (405) 232-4100 ** F: (405) 232-4140
smansell@meclaw.net

**ATTORNEYS FOR PLAINTIFF**