**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MARTIN L. POINSETT,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>　　　　　　　　　　Defendant. | Case No: 5:21-cv-1205 F<br><br>**JURY TRIAL DEMANDED<br>ATTORNEY LIEN CLAIMED** |

**SECOND AMENDED COMPLAINT**

1.　　Plaintiff, Martin L. Poinsett ("Plaintiff" or "Mr. Poinsett"), bought a disability insurance policy from Cigna Group Insurance ("Cigna"). Cigna had the policy issued through Life Insurance Company of North America ("LINA"). Mr. Poinsett faithfully paid premiums for this coverage for approximately eighteen (18) years up until the date that he had to stop working because of a serious, life-threatening illness and resulting disability.

2.　　Mr. Poinsett bought this disability insurance for peace of mind and to protect his family from financial disaster if he became disabled and unable to work and earn a living. LINA sold this insurance for commercial advantage, i.e., to make a profit. LINA owes Plaintiff a duty of good faith and fair dealing to promptly investigate and evaluate fairly and objectively and pay covered claims. Insurance industry standards for handling first party claims such as this claim require the insurers to explain the coverages and the coverage determinations and to have properly trained and unbiased examiners, consultants and experts to work the claims. Further, the insurers' claim department should give equal

consideration to the insured's interests, be fair to the insured and give the benefit of any reasonable doubt to the insured.  LINA did not do any of these things.  LINA makes more money by looking for excuses to deny coverage and by using biased consultants who have a financial incentive to help the insurer deny claims.

3. Mr. Poinsett became disabled and unable to work as a result of a serious illness diagnosed in early 2018.  His medical condition was so serious that it is normally fatal.  The painful and disabling sequela and complications from this illness are well documented in medical literature and in Mr. Poinsett's medical records.  Mr. Poinsett had a very successful insurance agency which provided a substantial income.  He would still be in that business if he could work but he cannot.  Mr. Poinsett has always worked hard to provide for his family and would be working now if he was not so sick from the serious and life-threatening illness that he has so far survived.

4. Mr. Poinsett made a timely claim for policy benefits with Cigna Group Insurance and complied with all terms and conditions of the subject disability insurance policy including providing information from his physicians establishing that he was unable to perform all the essential duties of his occupation solely due to injury or sickness and that he was unable to earn more than 80% of his "indexed covered earnings" as defined in the policy.  Upon information and belief, Cigna Group Insurance, now New York Life Group Insurance of NY, handles claims for LINA.

5. Cigna agreed that Mr. Poinsett was disabled under the terms of the subject insurance policy and began paying disability benefits.  In fact, Social Security Disability also recognized the severity of Mr. Poinsett's condition and approved his disability on the

first application which further confirms just how obvious it was and is that Mr. Poinsett was and is disabled as defined in the policy.

6. Cigna, on behalf of LINA, then later asserted that Mr. Poinsett was not disabled and terminated his policy benefits. Cigna ignored Plaintiff's doctors, records and opinions and Plaintiff's information as to the degree of pain and inability to work and looked for excuses to deny continuing the benefits including using biased consultants.

7. Cigna's denial of continuing policy benefits was in breach of the insurance policy and the implied covenant of good faith and fair dealing because Cigna:

    a. knowingly used purported experts who were biased in favor of the insurance company to deny benefits;

    b. refused to objectively investigate the degree of Mr. Poinsett's continuing pain and disability before terminating policy benefits;

    c. did not establish that Mr. Poinsett was able to actively work in any substantially gainful occupation for which he was or may have been reasonably qualified, nor did the insurer establish that Mr. Poinsett was able to earn 80% of his or her indexed covered earnings as defined in the policy;

    d. used restrictions and limitations not set forth in the policy in order to reduce and restrict the policy benefits;

    e. failed and refused to follow its own policies and procedures regarding the handling of disability insurance claims and failed to comply with insurance industry standards for handling first party disability insurance claims;

    f. denied policy benefits knowing there was no proof that Mr. Poinsett was able to actively work in any substantially gainful occupation for which he was qualified or may reasonably become qualified by reason of his education, training or experience;

    g. denied benefits knowing there was no proof that Mr. Poinsett was able to earn more than 80% of his indexed covered earnings; and

    h.  did these things as a matter of routine claim practice.  This is how they handle claims under policies that their insureds have purchased in good faith.

  8. Mr. Poinsett filed an appeal on April 12, 2021 providing additional documentation including a report from a vocational expert, a letter from Mr. Poinsett's primary care physician, and statements confirming Mr. Poinsett was unable to work in any substantially gainful occupation or earn more than 80% of his indexed covered earnings (as defined in the policy).  Cigna rarely, if ever, reverses a prior denial because it makes more money by not paying or continuing to pay claims.  Cigna (now New York Life) uses its overwhelmingly superior financial position and resources to drag out claims and lawsuits knowing the insured is sick or disabled and in severe financial distress and possibly likely to give up.

  9. Although Cigna started out handling Plaintiff's claim, while Plaintiff's claim was pending, New York Life Insurance Company purchased Cigna Group Insurance and acquired Cigna's claims department and employees to continue to handle long term disability claims in the way Cigna had handled claims.  New York Life further set up New York Life Group Benefit Solutions as the department to handle claims in the place instead of Cigna Group Insurance or Cigna.  New York Life Group Benefit Solutions handled the appeal like Cigna because the Cigna employees and claims department went to work for New York Life after it bought Cigna and New York Life adopted the claim procedures and guidelines from Cigna.  It was essentially the same people, claims department, and claim guidelines and procedures with a new name.  These claim handlers are employees of New York Life Group Insurance Company of NY.  At all times material hereto, Cigna or Cigna

Group Insurance and New York Life Group Benefit Solutions were involved in this case as the representative and/or claim handling entity for LINA and LINA is responsible for the acts and omissions of Cigna, Cigna Group Insurance and New York Life Group Benefit Solutions because the duty of good faith and fair dealing is nondelegable pursuant to Oklahoma law.

10. Cigna/New York Life/LINA's conduct in summarily rejecting Plaintiff's appeal, like the conduct of Cigna in handling the claim, was done as a matter of routine claim practice by these insurers wherein the insurers automatically contest disability claims that they had previously found to be payable by using biased, untrained and unfair persons in the guise of objective and neutral expert witnesses.

11. As a result of the actions of the insurers, Plaintiff has suffered loss of policy benefits, financial hardship, mental and emotional injury, physical bodily pain and injury, worry, and embarrassment. Plaintiff is further entitled to statutory interest and statutory attorney fees.

12. Mr. Poinsett has a single cause of action to recover his disability insurance benefits under the policy. He is currently advancing this claim concurrently on breach of contract and bad faith theories seeking indemnity for his loss under the insurance contract together with the appropriate damages for the insurers' bad faith refusal to provide such policy coverage. *Taylor v. State Farm Fire and Casualty Company*, 1999 OK 44, 981 P.2d 1253 (Okla. 1999).

13. Further, although the insurers' actions in denying policy benefits was intentional and without just cause, there is no intent to harm requirement for either breach

5

of contract or insurance bad faith under Oklahoma law.

14. Defendant's actions were willful, reckless, intentional and malicious and were done as a matter of routine claim practice without regard to the serious harm caused to its insureds by the callous disregard for their right to promptly receive policy benefits in the event of disability. Therefore, Mr. Poinsett is entitled to punitive damages. The right to and the determination of the amount of punitive damages under Oklahoma law is to be determined by the jury. Punitive damages are not a separate claim or cause of action under Oklahoma law but rather are additional type of damage available to insureds in insurance bad faith cases such as this.

15. Plaintiff demands and is entitled to a jury trial to determine the appropriate verdict amount to fairly compensate him for the damages caused by Defendant's acts and omissions and to further determine the appropriate amount of punitive damages to punish Defendant for what it did here and to deter Defendant and other insurers from committing similar wrongful acts in the future.

**WHEREFORE**, Plaintiff, Martin L. Poinsett, prays for damages against Life Insurance Company of North America in the amount of the remaining insurance policy benefits owed plus statutory interest, compensatory damages, extra contractual damages, punitive damages and for all other relief which the Court deems just and equitable. The amount in controversy exceeds the amount required for federal court jurisdiction.

**MANSELL ENGEL & COLE**

s/ Steven S. Mansell
Steven S. Mansell, OBA #10584
Kenneth G. Cole, OBA #11792

| | |
|---|---|
| **JURY TRIAL DEMANDED**<br>**ATTORNEY LIEN CLAIMED** | Zachary K. Housel, OBA #32802<br>204 North Robinson Avenue, 21st Floor<br>Oklahoma City, OK 73102<br>T: (405) 232-4100 ** F: (405) 232-4140<br>smansell@meclaw.net<br>**ATTORNEYS FOR PLAINTIFF** |

## **CERTIFICATE OF SERVICE**

  I hereby certify that on February 2, 2022, I filed the attached document with the Clerk of Court. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

                   s/ Steven S. Mansell