## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

MARTIN L. POINSETT,

        Plaintiff,

v.

LIFE INSURANCE COMPANY OF NORTH
AMERICA,

        Defendant.

CIVIL ACTION NO. 5:21-CV-01205-F

### LINA'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Martin Poinsett contracted with State Farm Mutual Automobile Insurance Company ("State Farm") as an independent insurance agent. He elected coverage under a group long-term disability ("LTD") policy (the "Group Policy") issued by Life Insurance Company of North America ("LINA"), a Pennsylvania insurance company, to State Farm, an Illinois insurance company. The Group Policy contains an explicit choice of law provision that "[i]t is issued in Illinois and shall be governed by its laws."

Plaintiff stopped working on April 3, 2018 and submitted a claim under the Group Policy. LINA approved his claim while he received successful treatment for cancer. After recovering from treatment, Plaintiff's oncologist and pain management doctor cleared him to work. LINA therefore determined that Plaintiff no longer met the definition of disabled under the Group Policy as of August 20, 2020. Plaintiff submitted an appeal and LINA obtained an independent medical examination ("IME") in connection with its appeal investigation. LINA upheld its decision to terminate LTD benefits, because the IME and medical records supported LINA's decision.

Plaintiff filed this lawsuit alleging breach of contract and bad faith under Oklahoma law despite the Group Policy's Illinois choice of law provision. Plaintiff voluntarily obtained coverage under a Group Policy that had was governed by Illinois law and it was issued to an Illinois company. Plaintiff's claims relating to and arising from the Group Policy are thus governed by Illinois law. Illinois law recognizes breach of contract claims, but bad faith claims are governed by Section 155 of the Illinois Insurance Code. 215 ILCS 5/155.

Furthermore, Plaintiff has failed to adequately state a claim based on LINA's handling of his LTD claim under any state's law (215 ILCS 5/155 or Oklahoma common law). Accordingly, LINA requests that the Court enter judgment on the pleadings in LINA's favor on Count II.

## STANDARD OF REVIEW

**A.    Judgment on the Pleadings Is Appropriate When The Complaint Fails to State a Cause of Action.**

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). The court evaluates a Fed. R. Civ. P. 12(c) motion using the same standard as a Fed. R. Civ. P. 12(b)(6) motion. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (citing *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)); *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000); *Brown v. Montoya*, 662 F.3d 1152, 1160 n. 4 (10th Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007);

*see also Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) ("[I]n examining a complaint under Rule 12(b)(6), we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."). Legal conclusions pled as factual allegations are not entitled to an assumption of truth in a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Accordingly, pleadings that are merely "naked assertion[s]" based on legal conclusions fail to meet the plausibility standard necessary to survive a motion to dismiss. *Id.* Judgment on the pleadings is appropriate when the pleadings disclose that there are no material issues of fact to be resolved and that the party is entitled to judgment as a matter of law. *Colony Ins. Co.*, 698 F.3d at 1228.

The Court may consider documents attached to the complaint or referenced in the complaint if they are central to the claims and the parties do not dispute the documents' authenticity. *Brokers' Choice of Am. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017). Here, the Court may consider the Group Policy which is at the heart of Plaintiff's claims. (*e.g.*, Second Am. Compl. ¶ ¶ 1-7); *Woodie v. Berkshire Hathaway Homestate Ins. Co.*, 806 F. App'x 658, 665 (10th Cir. 2020) ("Rule 12(d) is not implicated when a court consider[s] documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.")(Internal citations omitted). Because Plaintiff's claims are premised on LINA's claim decision, the letters communicating those decisions may also be considered.

**ARGUMENT**

**I.     Illinois Law Applies to All of Plaintiff's Claims Per the Policy's Choice of Law Provision.**

The Group Policy states "[i]t is issued in Illinois and shall be governed by its laws. The Policy goes into effect . . . at the Policyholder's address [in Bloomington, IL]." (Exhibit 1 at 1.) The Policy was delivered in Illinois, to the policyholder, an Illinois company, whose main office address is located in Bloomington, IL 61791. (*Id.*). When Plaintiff contracted to sell insurance products for State Farm, he became eligible to participate in coverage under the group policy, subject to its terms, including this choice of law provision.

Oklahoma courts have long honored the parties' selection of a particular state's law to control the agreement. *See Carmack v. Chem. Bank N.Y. Trust Co.*, 1975 OK 77, 536 P.2d 897. Nothing exempts group insurance policies from that rule. Indeed, the United States Supreme Court has explained that it is particularly important to apply a single state's law to claims made under a group policy—even where the covered participants live in different states. *Boseman v. Connecticut General Life Ins. Co.*, 301 U.S. 196, 206 (1937). Specifically, the Supreme Court upheld a group policy's provision electing Pennsylvania law, even where it barred a Texas insured's claim (that would have been proper under Texas law). Though honoring the choice of law provision imposed a harsh result on that one plaintiff, it was important that the group policy "have the same meaning and give the same protection" to all insureds because it avoids "inequalities and confusion liable to result from application of diverse state laws." Group insurance is distinct from individual insurance. As the Court pointed out in *Boseman*, group insurance claimants are "not parties

4

to, nor did they have any voice in, the negotiation or consummation of the contract." *Id.* at 202. Rather, "[t]he terms of the policy were settled by the [policyholder] and [the insurer]. Eligible employees were given opportunity upon specified conditions to have insurance." *Id.* Indeed, as here, "[t]he policy did not of itself insure [the plaintiff] or any other person. It merely made available specified insurance to certain employees [here, independent contractors]." *Id.* The Supreme Court reasoned "[b]y his application petitioner accepted the provisions of the policy including the agreement of the [policyholder] and [insured] that the policy is governed by Pennsylvania law." *Id.* at 203.

Choice of law provisions in group policies are routinely enforced to further the goal of applying one set of rights to all insureds covered by a group policy. *Woelfling v. Great-West Life Assur. Co.*, 30 Ohio App. 2d 211, 216, 285 N.E.2d 61, 66 (Ohio Ct. App. 1972); *see also Hofeld v. Nationwide Life Ins. Co.*, 59 Ill. 2d 522, 529, 322 N.E.2d 454, 458 (1975). In the analogous ERISA context, courts likewise honor choice of law provisions in the group policies that fund ERISA benefits, including disability benefits. *Ellis v. Liberty Life Assurance Co. of Boston*, 958 F.3d 1271, 1284 (10th Cir. 2020), *cert. denied, Ellis v. Liberty Life Assurance Co. of Boston*, 141 S. Ct. 2567 (2021); *Wang Labs. v. Kagan*, 990 F.2d 1126, 1128–29 (9th Cir. 1993); *Brake v. Hutchinson Tech. Inc.*, 774 F.3d 1193, 1197 (8th Cir. 2014); *Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1149 (11th Cir. 2001).

The choice of law provision here is enforceable. Illinois law governs Plaintiff's claims.

A.     **Illinois Law, Which Governs The Contract, Specifies That The Duty Of Good Faith And Fair Dealing Is Not An Independent Tort.**

Illinois law governs the group policy. That means it governs the express and the implied terms of that contract. *See Prescott v. Allstate Ins. Co.*, 341 F. Supp. 2d 1023, 10261027 (N.D. Ill. 2004 ("Illinois... does not recognize the contractual covenant of good faith and fair dealing as valid grounds for an independent tort action.") In first party cases, where the insured brings a claim directly against the insurer, Illinois law does not recognize the tort of breach of the implied covenant of good faith and fair dealing. *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 523-527 (1996). Illinois law implies a duty of good faith into "every contract in Illinois." *Anderson v. Burton Associates, Ltd.*, 218 Ill. App. 3d 261, 267, 578 N.E.2d 199, 203 (1991). The implied duty "is essentially used as a construction aid in determining parties' intent, and vague notions of fair dealing do not form the basis for an independent tort." *Id.* Illinois law does not recognize an independent tort based on the implied term of good faith and fair dealing. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992). Accordingly, Plaintiff cannot assert a claim for the independent tort here.

Plaintiff may attempt to rely on *Martin v. Gray*, 385 P.3d 64 (Okla. 2016) in which the Supreme Court of Oklahoma held that the tort of bad faith is an independent tort under Oklahoma law, even where the Restatement would select the law of some other state to govern the insurance contract. However, *Martin* did not involve a group policy with an express choice-of-law provision. Most applicable here, the Supreme Court has long-since enforced a choice-of-law provision in a group disability policy and further emphasized the

6

importance of uniformly interpreting rights under the group policy regardless of where the insureds individually resided. *See Boseman v. Connecticut General Life Ins. Co.*, 301 U.S. 196.

The Restatement (Second) of Conflict of Laws directs that the rights against the insurer are governed by the law of the state where the group policyholder is located or the place of delivery of the master policy (which usually is the group policyholder's location). As explained in the Restatement, Comment (h) regarding group life policies:

> In the case of group life insurance, rights against the insurer are usually governed by the law which governs the master policy. This is because it is desirable that each individual insured should enjoy the same privileges and protection. So where an employer arranges for group life insurance for its employees, the rights of a particular employee against the insurer will usually be determined, in the absence of an effective choice-of-law clause and at least as to most issues, not by the local law of the state where the employee was domiciled and received his certificate but rather by the law governing the master policy with respect to that issue. This will usually be the state where the employer has his principal place of business.

This Comment also applies to group health and disability policies. *See e.g. Hofeld v. Nationwide Life Ins. Co.*, 59 Ill. 2d 522, 529 (Supreme Court of Illinois 1975); *Karpenski v. American General Life Companies, LLC*, 999 F. Supp. 2d 1218, 1222 and 1229 (W.D.Wash. 2014) and *Wissot v. Great-West Life & Annuity Ins. Co.*, 619 Fed. Appx. 603 (9th Cir. 2015).

*Martin* does not apply here, where Plaintiff is not a named insured and the group policy (issued to an Illinois company with whom Plaintiff chose to contract) explicitly chose to be governed not just by Illinois contract law, but by all the laws of Illinois. In this case, as discussed previously, the Group Policy contains an express choice-of-law

provision selecting the law of Illinois where State Farm is located, and where the Group Policy was delivered, to govern the disputes under the contract.

This is particularly true where, as here, Plaintiff's sole complaint is that LINA made the wrong decision under the terms of the Group Policy. Plaintiff's claims rely entirely on the interpretation of the Group Policy and the alleged breach resulting from the interpretation of the Policy's benefits. Plaintiff concedes that his bad faith action arises from "[LINA's] denial of continuing policy benefits in breach of the insurance policy . . ." (*See* Second Am. Compl. ¶ 6) He emphasizes "timely claim for policy benefits" and his "compliance with all the terms and conditions" of the group policy thereafter. (*See* Second Am. Compl. ¶4.)  Plaintiff's attempted bad faith tort action rests exclusively on whether the Group Policy entitles Plaintiff to policy benefits. The Group Policy's choice-of-law provision is thus consistent with the majority rule applying the law where the group policyholder is located.

**B.**     **Even Under The "Most Significant Relationship" Test, Illinois Law Governs.**

Even if the "most significant relationship" test set forth by *Martin* applies, Illinois still governs the bad faith claim. Under the "most significant relationship test,"

> the rights and liabilities of parties ***with respect to a particular issue in tort*** shall be determined by the local law of the state which, ***with respect to that issue***, has the most significant relationship to the occurrence and the parties. The factors to be taken into account and to be evaluated according to their relative importance with respect to a particular issue, shall include: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties occurred.

*Martin v. Gray*, 385 P.3d at 67 (quoting *Brickner v. Gooden*, 525 P.2d 632 (Okla. 1974)) (emphasis added).

Plaintiff attempts to plead a tort based entirely whether he is entitled to LTD benefits under the group policy. Because the Group Policy is central to the alleged tort, factor four (the place of the relationship between the parties) carries the most weight. The Group Policy specifically provides the place of contracting was Illinois. (Exhibit 1.) LINA negotiated it with an Illinois company, State Farm Mutual Insurance Company, and it was issued in Illinois. (*Id.*) In addition, to be eligible for coverage under the Group Policy, Plaintiff had to become an independent contractor of State Farm (again, an Illinois company) and then elect to be covered under the Group Policy (issued in Illinois and containing an Illinois choice of law provision). The relevant risk, applicable to the Group Policy as a whole, was located in Illinois. The only connection Oklahoma has to this litigation is that Plaintiff resides here. Plaintiff's state of residence is not relevant to the particular issue raised in his tort claim, because his entire case turns on whether the contract entitles him to benefits. Illinois law governs Plaintiff's claims.

### C.   Illinois Law Prohibits Plaintiff's Common Law "Bad Faith" Claim.

Illinois does not allow a tort claim for bad faith. *Cramer v. Ins. Exch. Agency*, 174 Ill.2d 513, 527-528 (1996). Instead, Illinois enacted section 155, which provides "the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed [60% of the recovery amount, $60,000, or excess over amount offered in settlement and the amount to which the insured is entitled to recover"] when an

insurer denies, delays, or settles an insurance claim in a "vexatious and unreasonable" manner. 215 Ill. Comp. Stat. 5/155; *Cramer*, 174 Ill.2d at 519-520.

Taking cues from *Cramer*, Illinois courts have exhibited "steadfast refusal to recognize an independent [bad faith] tort arising from the breach of [a] contractual covenant." *Iowa Physicians' Clinic Med. Found. V. Physicians Ins. Co.*, 547 F.3d 810, 812 (7th Cir. 2008); *see Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1132 (Ill. 2001)(refusing to "expand the reach of the limited [bad-faith] cause of action acknowledged by *Cramer* in duty-to-settle cases"). This Court should do the same.

## II.    Plaintiff Fails to Properly Plead A Claim Under Illinois Or Oklahoma Law.

Plaintiff's complaint alleges that LINA wrongly terminated his disability benefits. While this may state a claim for breach of contract, it does not plead any facts to support a bad faith claim or a claim under Section 155 of the Illinois Insurance Code. Plaintiff improperly relies on conclusory allegations that are woefully insufficient to plead his claims. Regardless of which state's law applies, Plaintiff has failed to plead anything beyond breach of contract.

As this Court has explained, a claim cannot survive on conclusory allegations. Rather, a complaint must contain enough facts to state a claim for relief that is plausible on its face. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir., 2007), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). To survive a motion [for judgment on the pleadings], a plaintiff must nudge his claims across the line from conceivable to plausible. *Id.* The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must

give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. *Ridge at Red Hawk*, 493 F.3d at 1177. . . . Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S.662, 664 (2009). . . . The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678*; Grudowski v. Farm Fire*, 2016 WL 11593834, at *1 (W.D. Okla. Aug. 30, 2016) (dismissing bad faith claim where "the allegations [were], from a legal standpoint, merely conclusory").

To properly plead a claim for bad faith, a plaintiff must provide facts that would prompt a reasonable inference to show Defendant's bad faith handling of a claim beyond a bare disagreement with the claim decision. *Morgan v. Provident Life and Accident Ins.*, 2021 WL 3216469 (W.D. Okla.); *see also Daily v. USAA Cas. Ins. Co.*, 2014 WL 122729172 ("To establish a bad faith claim under Oklahoma law, plaintiff must prove more than a mere breach of contract: she must also prove that defendant acted unreasonably and in bad faith in handling her claim."); *see also Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) ("A bad-faith claim will not survive dismissal where the plaintiff "offer[s] only 'mere labels and conclusions.'").

This same standard applies to pleading claims under 215 ILCS 5/155. At the pleading stage, a plaintiff cannot simply allege that the insurer knowingly and intentionally denied a claim and that the denial was vexatious and unreasonable. Without more, a

plaintiff fails to state a cause of action under Section 155. *See Am. Alliance Ins. Co. v. 1212 Restaurant Group, L.L.C.*, 342 Ill. App. 3d 500, 511 (2003) ("If the insured merely states that the insurer committed vexatious and unreasonable delay without some modicum of factual support, the insured will not have stated a cause of action under section 155."); *see also Scudella v. Illinois Farmers Ins. Co.*, Ill. App. 3d 245, 253 (1988) (affirming dismissal of Section 155 claim where the plaintiff "made no factual allegations other than claiming defendant 'unreasonably delayed and refused to pay'").

Plaintiff does not meet this burden with "unadorned, unexplained allegations" that "do not plausibly suggest unreasonable, bad faith conduct." *Morgan, supra,* 2020 WL 12992044 (W.D. Okla.) (dismissing bad faith claim). Even where a plaintiff provides a list of things that might constitute unreasonable bad faith conduct, the claim is not adequately pled unless the allegations support "a reasonable inference that any of that conduct occurred in Defendant's handling of the claim." *Id*. Plaintiffs must identify specific aspects of claim handling ***in that claim*** that were unreasonable. *Id*.

District courts in Oklahoma routinely dismiss bad faith claims where—as here— plaintiffs rely on conclusory allegations untethered from the actual facts of their claims. *See, e.g.*, *Hightower v. USAA Cas. Ins. Co.*, 2017 WL 1347689 (N.D. Okla.) ("plaintiff did not allege any facts other than the failure to pay the full amount"); *see also Scheffler v. Am. Republic Ins. Co.*, 2012 WL 602187 (N.D. Okla.) ("Plaintiff's bad faith claim is based solely on the fact that she was not paid the insurance proceeds under the policy. Without more, her bad faith claim is not plausible under the *Twombly/Iqbal* standard."); *see also Fortelney v. Liberty Life Assur. Co. of Boston*, 790 F. Supp. 2d 1322, 1328 (W.D. Okla.

12

2011) ("pleadings that are no more than legal conclusions are not entitled to the assumption

of truth...").

Plaintiff does not specifically plead any facts to support his assertion of bad faith on

the part of LINA. Instead, he recites a laundry list of conclusory allegations:

> Cigna's denial of continuing policy benefits was in breach of the insurance
> policy and the implied covenant of good faith and fair dealing because Cigna:
>
> a.   knowingly used purported experts who were biased in favor of the
>      insurance company to deny benefits;
> b.   refused to objectively investigate the degree of Mr. Poinsett's
>      continuing pain and disability before terminating policy benefits;
> c.   did not establish that Mr. Poinsett was able to actively work in any
>      substantially gainful occupation for which he was or may have been
>      reasonably qualified, nor did the insurer establish that Mr. Poinsett was
>      able to earn 80% of his or her indexed covered earnings as defined in
>      the policy;
> d.   used restrictions and limitations not set forth in the policy in order to
>      reduce and restrict the policy benefits;
> e.   failed and refused to follow its own policies and procedures regarding
>      the handling of disability insurance claims and failed to comply with
>      insurance industry standards for handling first party disability
>      insurance claims;
> f.   denied policy benefits knowing there was no proof that Mr. Poinsett
>      was able to actively work in any substantially gainful occupation for
>      which he was qualified or may reasonably become qualified by reason
>      of his education, training or experience;
> g.   denied benefits knowing there was no proof that Mr. Poinsett was able
>      to earn more than 80% of his indexed covered earnings; and
> h.   did these things as a matter of routine claim practice. This is how they
>      handle claims under policies that their insureds have purchased in good
>      faith

(*See* Second Am. Compl. ¶ 7) These are textbook generalized accusations without

sufficient factual support. Plaintiff makes no fact specific references to the language of the

policy, the nature of the investigations, the medical records, the identities of the "biased"

purported experts, or the denial. Thus, Plaintiff's bad faith claim fails to state a claim under

the *Twombly* and *Iqbal* requirements. If courts accepted generic, conclusory accusations to support bad faith claims, every claim denial in Oklahoma would become a viable bad faith claim. *Bunnell v. American Bankers Ins. Co. of Fla.*, 2013 WL 9554564; *see e.g. Scheffler* (holding that plaintiff failed to plead bad-faith claim where complaint failed to allege any facts aside from the insurance company's alleged failure to pay proceeds under the policy). This is the exact opposite of pleading "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Regardless of which state's law applies, Plaintiff has not pled any claim beyond breach of contract.

## CONCLUSION

Count II of Plaintiff's Complaint must be dismissed based on the reasons outlined above.

Dated this 15th day of July, 2022.

Respectfully submitted,

/s/ Kristina N. Holmstrom
Kristina N. Holmstrom
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
2415 E. Camelback Rd. Suite 800
Phoenix, AZ 85016
Telephone: (602) 778-3700

Eric P. Mathisen
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
56 South Washington Street, Suite 302

Valparaiso, IN 46383
Telephone: (219) 242-8649

*Attorneys for Defendant*
*Life Insurance Company of North America*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of July, 2022, the attached document was electronically transmitted to  the Clerk's Office using the CM/ECF Systems for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Steven S. Mansell, Esq.
Kenneth G. Cole, Esq.
Zachary K. Housel, Esq.
MANSELL ENGEL & COLE.
204 North Robinson Avenue, 21st Floor
Oklahoma City, OK 73102
smansell@meclaw.net
*Attorneys for Plaintiff*

/s/ Rose S. Ramsey
An Employee of Ogletree, Deakins,
Nash, Smoak & Stewart, P.C.