# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARTIN L. POINSETT,<br><br>              Plaintiff,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>              Defendant. | Case No.: 5:21-CV-1205-F |

## PLAINTIFF'S SURREPLY TO DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff submits this *Surreply* in rebuttal of new argument and cases presented in LINA's *Reply* (Doc. No. 31).

**I.  Conflict Between the Group Policy and the Certificate**

LINA cites (page 4) a pair of ERISA cases for the proposition that "silence" in the certificate does not "conflict" with the master plan. One, this is not an ERISA case. Two, and to the pertinent point, it was silence in the certificate in *Martin* that created the conflict and ambiguity that was construed in the insured's favor: "Under the master policy, benefits would not be payable if death resulted from (6) *suicide or any self-inflicted injury while sane or insane*." *Id.* at ¶ 2, 1079. The exclusion in the certificate, applied, by contrast, to "death result[ing] from (6) *suicide or any attempted threat*." *Id.* Emphasis original. The decedent's death was by self-inflicted gunshot wound. But the trial court found that he did not intend to kill himself and therefore his death was accidental. *Id.* at ¶ 1. Even though the master plan would have excluded the death as "self-inflicted" regardless of whether intentional ("suicide") or not, that the certificate was silent regarding "any self-inflicted

1

injury," meant unintentional self-inflicted injury was covered despite the broader exclusionary language in the master plan. *Id,* generally.

Finally, regarding LINA's Argument I, LINA returns to *Boseman,* now claiming it merely cited *Boseman* as an "illustration" of good policy. Regardless, even *Boseman's* "uniformity" argument was rejected, at least as applied here, with the Oklahoma Supreme Court's holding (in *Martin*) that the certificate sent to the individual insured controls over contrary language in the master plan. *Martin—*and *Leritz* and *Haworth*—require application of Oklahoma law because of the conflict and ambiguity in and between the master plan and the certificate regarding choice of law. *See Response,* Doc. No. 27, Propositions III(B), IV(B) and (C).

## II.   No Conflict Between Oklahoma and Illinois Contract Law

In Oklahoma, the tort of bad faith "is not consensual, it is imposed by law." *Martin v. Gray*, 2016 OK 114, ¶¶7-9, 385 P.3d 64, 66-67. In Illinois, per LINA, it is a statutory claim. This does not, thus, demonstrate a difference between the two state's *contract law*s. Also, as shown in Proposition V to Plaintiff's *Response* (Doc. 27), even if the choice of law clause was somehow valid, it cannot encompass *tort or statutory claims*.

## III.   Place of Issue Versus Place of Delivery

LINA also cites a Pennsylvania federal court case (*Henning v. Metro. Life Ins. Co.*, 546 F. Supp. 442, 446 (M.D. Pa. 1982)) for the proposition that the place "where a policy is issued is significant in determining the place of delivery, and thus the prevailing law to be applied." Doc. No. 31, p. 6. That case does not say that. First, *Henning* is not a *lex loci contractus* case. *It was **not** looking for the place of delivery or making of the contract* but

instead applies a choice of law rule that looks for the jurisdiction "which has more contacts with and more interest in the matter at issue . . . ." *Id.* at 446. That court rejects that plaintiff's "qualitative analysis," which is at the heart of Oklahoma's most significant relationship test. *Id.*[1] Here, of course, whether the contacts are analyzed "quantitatively" or "qualitatively," Illinois has no real concern with this case.

Second, it was undisputed that the policy in *Henning* was "applied for, negotiated, signed, *issued and delivered*" in New York. *Id.* Emphasis added (thus the case says nothing about equating place of issue with place of delivery). Third, it was significant in *Henning,* that while New York had a statute regulating policies "issued or delivered" (which also shows these terms mean different things) in New York, Pennsylvania did not have such a statute. *Id.* at 447. Here, Oklahoma also has statutes like the New York statute.[2] Fourth, *Henning* also relied upon *Boseman* for its determination. *Boseman*, as shown, is inconsistent with Oklahoma law. Fifth, and finally, *Henning* concerns only a question of contract construction. It says nothing about tort claims.

LINA's two other Pennsylvania cases are also inconsistent with Oklahoma law. The *Home for Crippled Children* case is based upon *Henning,* and for the same reasons. *Home for Crippled Children v. Prudential Ins. Co.,* 590 F. Supp. 1490, 1500 (W.D. Pa. 1984). The state case (*Layman*) is not a choice of law case, and it applies a rule that is anathema to

---

[1] E.g., *Graves v. Mazda Motor Corp.*, 598 F. Supp. 2d 1216, 1218 (W.D. Okla. 2009) ("In resolving the choice of law issue in this case, the court does not engage in mere counting of factual contacts, to see which state has the most' . . .").

[2] E.g., 36 O.S. §§ 4103 and 4502, mandating certain provision in group contracts insuring Oklahoma citizens.

3

Oklahoma (per *Martin v. Okla. Farmers Union*): "the group insurance policy issued to the employer and not the certificate issued to the individual employee was the actual contract or policy of insurance from which the certificate holders' rights must be measured." *Layman v. Cont'l Assurance Co*., 416 Pa. 155, 205 A.2d 93, 96 (1964).

Finally with respect to LINA's Argument IV, the Conformity provision *does not "conform to the state where the Group policy was issued," as stated by LINA. It conforms the coverage to the state where the policy "is delivered."* That is Oklahoma.

## IV. Most Significant Relationship Test and the Tort Claim

As with the question of the scope of the "choice of law" clause and the Restatement comment, LINA has yet to cite a case that suggests Illinois law should apply to Mr. Poinsett's tort claim. Even the one Restatement "factor" LINA cites in its favor, it distorts. Factor four, it notes, pertains to "the place of the relationship between the *parties.*" Doc. 24, p. 9; Doc. No. 31, p. 8. Emphasis added. *State Farm is not a party to this action*; nor does it have any interest in matters at issue in this lawsuit. Thus this factor, like all the rest of the Restatement factors (place of injury, place of injury causing conduct, domicile of the *parties*), points to application of Oklahoma law to the tort claims.

Respectfully submitted,
s/ Steven S. Mansell
Steven S. Mansell, OBA #10584
Kenneth G. Cole, OBA #11792
Zachary K. Housel, OBA #32802
**MANSELL ENGEL & COLE**
204 North Robinson Avenue, 21st Floor
Oklahoma City, OK 73102-7001
T: (405) 232-4100 ** F: (405) 232-4140
smansell@meclaw.net
**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 24, 2022, I filed the attached document with the Clerk of Court.  Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

                                                      s/ Steven S. Mansell