IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARTIN L. POINSETT, | ) |
|       Plaintiff, | ) |
| -vs- | ) Case No. CIV-21-1205-F |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) |
|       Defendant. | ) |

**ORDER**

In this diversity action, plaintiff Martin L. Poinsett (Poinsett) has sued defendant Life Insurance Company of North America (LINA), alleging claims of breach of contract and bad faith. LINA has filed a motion for judgment on the pleadings under Rule 12(c), Fed. R. Civ. P. *See*, doc. no. 24. Poinsett has responded, opposing LINA's motion. *See*, doc. no. 27. LINA has replied. *See*, doc. no. 31. Upon due consideration of the parties' submissions, the court makes its determination.

I.

Poinsett, working as an independent insurance agent, elected coverage under a group long-term disability insurance policy issued by LINA to State Farm Mutual Automobile Insurance Company. After being diagnosed with a serious and life-threatening illness, Poinsett submitted a claim for disability benefits under the policy. The claim was initially approved, and disability benefits were paid. Subsequently, LINA determined that Poinsett was not disabled and terminated the disability benefits. Poinsett filed an appeal, providing additional documentation. LINA rejected Poinsett's appeal. Poinsett filed suit against LINA in the District

Court of Oklahoma County, State of Oklahoma.  LINA timely removed the action to this court.

LINA requests a partial judgment on the pleadings.  Specifically, it requests judgment in its favor with respect to Poinsett's bad faith claim.  LINA asserts that Illinois law, which applies to Poinsett's claims because of a choice-of-law provision in the group policy, does not recognize an independent tort of bad faith.  In addition, LINA contends that, regardless of the applicable state law, Poinsett fails to plead a plausible bad faith claim.

II.

Under Rule 12(c), Fed. R. Civ. P., a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]"  The court evaluates a Rule 12(c) motion under the same standard applicable to a motion to dismiss under Rule 12(b)(6).  The court accepts the plaintiff's allegations as true and grants all reasonable inferences in his favor.  Colony Ins. Co. v. Burke, 698 F.3d 1222, 1228 (10th Cir. 2012).  In deciding the motion, the court "may consider documents attached to the complaint or referenced in the complaint if they are central to the claims and the parties do not dispute the documents' authenticity." Burris v. MHM Support Services, Case No. CIV-19-1174-SLP, 2020 WL 2747992, at *1 (W.D. Okla. May 27, 2020) (citing Brokers' Choice of Am. v. NBC Universal, Inc., 861 F.3d 1081, 1103 (10th Cir. 2017).  The court should not grant a motion for judgment on the pleadings unless the defendant has clearly established that no material issue of fact remains to be resolved and defendant is entitled to judgment as a matter of law.  Colony, 698 F.3d at 1228.  Further, even though Rule 12(c) does not expressly provide for partial judgment on the pleadings, courts have regularly applied the rule to individual claims.  See, Ryan v. Salisbury, 382 F. Supp. 3d 1031, 1047 (D. Haw. 2019); Larsen v. Trader Joe's Co., 917 F. Supp. 2d 1019, 1022 (N.D. Calif. 2013).

III.

The parties dispute which law governs Poinsett's bad faith claim. As stated, LINA asserts that Illinois law governs the claim because of a choice-of-law provision included in the group policy. Poinsett counters that Oklahoma law should apply to the claim.

In a diversity action, the district court applies the substantive law of the forum state, including its choice of law rules. Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo., Inc., 431 F.3d 1241, 1255 (10th Cir. 2005). "'[T]he threshold question in determining the application of choice of law rules is whether there is a true conflict, a false conflict, or no conflict.'" Kentucky Bluegrass Contracting, LLC v. Cincinnati Ins. Co., 363 P.3d 1270, 1274 (Okla. Civ. App. 2015). Only a true conflict of law requires a choice of law analysis. Id. Further, the party asserting the applicability of law other than that of Oklahoma bears the burden of identifying and invoking that other law. Id.

The record reveals that LINA has identified and invoked Illinois law as governing Poinsett's bad faith claim. The court is satisfied that a true conflict exists between Illinois and Oklahoma laws with respect to the claim. Illinois law does not recognize an independent tort claim for bad faith. See, Cramer v. Insurance Exchange Agency, 675 N.E.2d 897, 903 (Ill. 1996). Instead, it provides for an extracontractual remedy consisting of attorney fees, costs, and a limited penalty if the insurer's conduct was vexatious and unreasonable. See, 215 ILCS 5/155 1(a) through (c); McGee v. State Farm Fire and Cas. Co., 734 N.E.2d 144, 151 (Ill. App. 2000). Oklahoma law, however, recognizes an independent tort claim for bad faith, which allows for the recovery of compensatory damages and, in a proper case, punitive damages. Martin v. Gray, 385 P.3d 64, 66 (Okla. 2016). The court therefore concludes that a choice of law analysis is required.

In the case at bar, the first page of the group policy states "[t]his Policy describes the terms and conditions of coverage. It is issued in Illinois and shall be governed by its laws." Doc. no. 24-1, ECF p. 2. Oklahoma courts will generally honor an effective choice-of-law provision. Williams v. Shearson Lehman Brothers, Inc., 917 P.2d 998, 1002 (Okla. Civ. App. 1995). In his papers, Poinsett proffers arguments challenging the validity and enforceability of the choice-of-law provision. For purposes of resolving LINA's motion, however, the court concludes that it need not address the validity and enforceability of the choice-of-law provision.

"A choice-of-law provision will govern only those claims that the parties have agreed to resolve according to the law of the selected jurisdiction." Almeida v. BOKF, NA, 471 F. Supp. 3d 1181, 1191 (N.D. Okla. 2020) (citing Hawk Enterprises, Inc. v. Cash Am. Int'l, Inc., 282 P.3d 786, 790 (Okla. Civ. App. 2012)). "[A] tort claim is outside a choice-of-law provision's scope unless the clause's language indicates an intent for the selected law to govern more than the meaning of the contract itself." Almeida, 471 F. Supp. 3d at 1192.[1]

The court concludes that the choice-of-law provision indicates an intent to apply Illinois law to disputes *over the group policy*. In the court's view, the provision is not broad enough to reach Poinsett's bad faith claim. *See*, Martin, 385 P.3d at 66 ("[A]n insurer's implied-in-law duty of good faith and fair dealing presents an independent tort[.]"). Consequently, even if the choice-of-law provision

---

[1] *See*, Finance One Pub. Co. Ltd. v. Lehman Bros. Special Financing, Inc., 414 F.3d 325, 332-33 (2d. Cir. 2005) ("More commonly, however, courts consider the scope of a contractual choice-of-law clause to be a threshold question like the clause's validity. Courts therefore determine a choice-of-law clause's scope under the same law that governs the clause's validity—the law of the forum."); *see also*, Naturalock Solutions, LLC v. Baxter Healthcare Corporation, No. 14-cv-10113, 2016 WL 5792377, * 4 (N.D. Ill. Oct. 4, 2016) ("While it appears that the parties are correct to assume that Oklahoma's choice-of-law rules determine whether the selection of Delaware law extends to Naturalock's tort claims, as a practical matter the outcome is likely the same if Delaware law dictates the scope of the choice-of-law provision as if Oklahoma law applies.").

4

in the group policy were valid and enforceable, the court concludes that Poinsett's bad faith claim falls outside the scope of the provision.

As the choice-of-law provision does not apply to the bad faith claim, the choice of law applicable to the claim is the "most significant relationship" test adopted in Brickner v. Gooden, 525 P.2d 632 (Okla. 1974).  *See*, Martin, 385 P.3d at 67.  This test is a balancing test under which the applicable law is "determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties."  Brickner, 525 P.2d at 637.  Factors for the court to evaluate include: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties occurred."  *Id*.  In addition, the court may consider "other more dispositive factors in determining the 'most significant contacts.'"  Beard v. Viene, 826 P.2d 990, 995 (Okla. 1992).

As to the first factor, place of injury, the alleged injury from the alleged bad faith conduct occurred in Oklahoma.  Poinsett was residing in Oklahoma when his appeal of the denial of his disability benefits claim was rejected, and he received no further disability benefits.

With respect to the second factor, it appears the alleged bad faith conduct causing the injury occurred in Oklahoma and Arizona where Poinsett's claim was handled.

Regarding the third factor, LINA is organized under the laws of, and has its principal place of business in, Pennsylvania, and Poinsett is a resident and citizen of Oklahoma.

Finally, as to the fourth factor, the relationship between the parties relating to the bad faith claim appears to have occurred in Illinois, Pennsylvania, Arizona, and Oklahoma.  LINA, headquartered in Pennsylvania, issued the long-term disability

5

insurance group policy to State Farm Mutual Automobile Insurance Company headquartered in Illinois. Poinsett, working as an independent insurance agent in Oklahoma and contracting with State Farm, elected coverage under the policy. It is not clear where Poinsett sent his premiums for coverage. It also not clear where Poinsett sent his claim for disability benefits. However, LINA paid the disability benefits to Poinsett in Oklahoma. Subsequently, LINA concluded that Poinsett was not disabled and made the decision to terminate the benefits. Poinsett appealed the decision, and the claim was handled in Oklahoma and Arizona. According to the letters submitted by Poinsett, whose authenticity is not disputed, the appeal was rejected in Arizona and Poinsett received notice of the rejection in Oklahoma.

The analysis of the factors discussed to this point suggests that, quantitatively, the factors weigh in favor of Oklahoma. However, the determination of which state has the most significant contacts is qualitative. The court therefore evaluates other dispositive factors. Those factors are "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." Beard, 826 P.2d at 995, n. 18.

In the court's view, the factors regarding the need of the interstate and international systems and the ease in determination and application of the law to be applied to the bad faith claim are neutral in this case.

As for the protection of justified expectations and certainty, predictability, and uniformity of result, a choice-of-law provision calling for the application of Illinois law was included in the group policy. LINA expected, as argued, that the law of Illinois would apply. Also, because coverage was obtained under a group policy,

6

LINA urges that Illinois law, based upon the choice-of-law provision, provides certainty, predictability, and uniformity. However, as previously discussed, the choice-of-law provision calling for Illinois law applies to disputes over the group policy, and Poinsett's bad faith claim is rooted in tort law, not contract law. Poinsett seeks redress for an alleged breach of a duty of good faith and fair dealing implied in law. The court concludes that the justified expectations of the parties and certainty, predictability, and uniformity should not be given a controlling effect in the choice-of-law analysis.

The relevant policy of the forum, Oklahoma, favors the availability of a tort theory of recovery. As discussed, Oklahoma recognizes an independent bad faith claim. And it allows for compensatory damages as well as, in a proper case, punitive damages. Unlike Oklahoma, Illinois does not recognize a tort theory of recovery. However, LINA is neither incorporated in Illinois nor does it have its principal place of business in Illinois. In addition, Illinois does not appear to have a strong policy against bad faith actions as it does allow for the recovery of attorneys' fees, costs, and a limited penalty for an insurer's vexatious and unreasonable conduct. The court concludes that application of the law of a state other than Illinois would not conflict with a substantial interest of Illinois.

Pennsylvania also does not recognize a common law tort action for bad faith. The only tort remedy for bad faith is the statutory remedy of interest, punitive damages and court costs and attorney fees. *See*, 42 Pa. C.S.A. § 8371; Employers Mut. Cas. Co. v. Loos, 476 F. Supp. 2d 478, 489 n. 8 (W.D. Pa. 2007). The court concludes that Pennsylvania would have a legitimate interest in regulating the application of a bad faith claim since defendant is incorporated and has a principal place of business in the state. However, the record does not indicate that the alleged conduct giving rise to the alleged injury occurred in Pennsylvania. According to the record before the court, it occurred in Arizona and Oklahoma. Further, LINA has

not advocated application of Pennsylvania law. And it does not appear that Pennsylvania has a strong policy against bad faith actions since it does allow for the recovery of punitive damages, interest, costs, and attorneys' fees as a remedy for bad faith. The court concludes that the application of the law of a state other than Pennsylvania would not conflict with a substantial interest of Illinois.

Arizona, like Oklahoma, recognizes the tort of bad faith. *See*, Zilisch v. State Farm Mutual Auto. Ins. Co., 995 P.2d 276, 279-80 (Ariz. 2000). The court concludes that Arizona, like Oklahoma, has a policy of protecting insureds by allowing recovery of damages against insurers for bad faith. However, the court notes that Poinsett is not a citizen of Arizona, and the alleged injury to him did not occur in that state.

The "basic policies underlying the particular field of law," tort law in this case, are to compensate the injured party and to deter bad faith conduct through the imposition of punitive damages. The relevant and identifiable policies of Oklahoma favor the application of its laws to the bad faith claim.

Upon review of the relevant factors, the court concludes that Oklahoma has the most significant relationship to the occurrence and the parties with respect to Poinsett's bad faith claim. Further, the court finds that LINA will suffer no manifest injustice from applying Oklahoma law. The court will therefore apply Oklahoma law to Poinsett's bad faith claim.

IV.

LINA additionally argues that, regardless of which law applies, Poinsett fails to set forth facts to state a plausible bad faith claim. Accepting Poinsett's allegations as true and granting all reasonable inferences in his favor, see, Colony Ins. Co., 698 F.3d at 1228, the court concludes that Poinsett has stated a plausible bad faith claim under Oklahoma law.

V.

Based upon the foregoing, LINA's Motion for Judgment on the Pleadings (doc. no. 24) is **DENIED**.

IT IS SO ORDERED this 20th day of September, 2022.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-1205p009.docx